# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
September 18, 2012[1] Session

## MARTIN D. "RED" PATTERSON, AS A CITIZEN OF THE STATE OF TENNESSEE, AND AS BUSINESS MANAGER OF THE INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 369, ET AL. v. THE CONVENTION CENTER AUTHORITY OF THE METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY

Direct Appeal from the Chancery Court for Davidson County
No. 11-1565-II     Carol L. McCoy, Chancellor



No. M2012-00341-COA-R3-CV - Filed January 17, 2013

Respondent Convention Center Authority appeals the trial court's determination that the residential addresses of employees of third-party contractors contained in payroll records submitted by the contractors to the Convention Center Authority are not exempt from disclosure under the Tennessee Public Records Act. Petitioners cross-appeal the trial court's denial of their request for attorney's fees and costs. We affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded**

DAVID R. FARMER, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and J. STEVEN STAFFORD, J., joined.

Stephen J. Zralek and Charles Robert Bone, Nashville, Tennessee, for the appellant, The Convention Center Authority of the Metropolitan Government of Nashville and Davidson County.

Deborah Godwin, Memphis, Tennessee, for the appellees, Martin D. "Red" Patterson and Wayne Wells.

---

[1]After review of the record and the arguments advanced by the parties, we provided the parties an opportunity to file supplemental briefs to address the extent to which the provisions of the Prevailing Wage Act contained in Title 12, chapter 4 of the Tennessee Code are made applicable to the Convention Center Authority by Tennessee Code Annotated § 7-4-205, and the extent to which subchapter 414 of the Prevailing Wage Act exempts payroll records from disclosure. Supplemental briefing was completed on December 12, 2012.

**OPINION**

This dispute requires us to determine whether the residential addresses of employees of third-party contractors contained in certified payroll records maintained by Respondent Convention Center Authority of the Metropolitan Government of Nashville and Davidson County ("the CCA"), a non-profit corporation organized under a private act of the General Assembly, are exempt from disclosure under the Tennessee Public Records Act ("the TPRA" or "the Act") as codified at Tennessee Code Annotated § 10-7-101, *et seq*. This appeal arises from a petition for access to municipal records filed pursuant to the TPRA by Martin D. "Red" Patterson (Mr. Patterson), as a citizen of the State of Tennessee and Business Manager of the International Union of Operating Engineers Local 369, and Wayne Wells (Mr. Wells), as a citizen of the State of Tennessee and Assistant Business Manager of the International Union of Operating Engineers Local 369 (collectively, "Petitioners") in the Chancery Court of Davidson County on November 15, 2011. In their petition, Petitioners asserted that they had requested access to the certified payroll records submitted to the CCA by contractors working on construction of the Music City Center ("the convention center") in Nashville for the purposes of investigating whether contractors constructing the convention center were paying wages at the rates required by law and "living up to commitments to hire employees from the local workforce." Petitioners asserted that the CCA failed to produce the payroll records in their complete form where it redacted the home addresses and social security numbers of the employees in violation of the TPRA. Petitioners further asserted that the CCA charged Petitioners an unreasonable fee for the redaction and preparation of documents. Petitioners prayed for a declaratory judgment that the requested records are public records under the TPRA, and that denial of the records constitutes a violation of the Act. They also prayed for reasonable costs and attorney's fees.

On November 23, 2011, the trial court issued an order to show cause why the CCA should not be required to produce the municipal documents. The CCA responded on December 12, 2011, asserting that Petitioners had made approximately 14 open records requests to the CCA in 2011, including quarterly requests for copies of the certified payroll. The CCA asserted that it had responded in good faith, producing thousands of pages of the certified payroll and redacting the employees' social security numbers and home addresses in accordance with laws to protect the employees' Constitutional privacy rights and to guard against identity theft. The CCA relied on *United States Department of Defense v. Federal Labor Relations Authority*, 510 U.S. 487 (1994), and federal rules promulgated to protect worker's home addresses and social security numbers from disclosure in support of its assertion that it did not wrongfully redact information from the records disclosed to Petitioners. The CCA further asserted that it had provided all documentation necessary to demonstrate compliance with the Prevailing Wages Act, and that it had "offered to provide information summarizing the percentages of workers hired at the local level while redacting home addresses to protect individuals' privacy." It submitted that it had acted in good faith to accommodate Petitioners' request. The CCA stated that it had sought guidance from the Tennessee Office of Open Records Counsel, which determined that it could not "say with certainty that the Authority is permitted to disclose employees' names and addresses contained with the certified payroll records of third-party subcontractors working on the Music City Center." The CCA further submitted that Petitioners' assertion that they requested the documents in order to assure compliance

-2-

with the Prevailing Wage Act was the only relevant question before the trial court where it was "rooted in law," whereas the CCA's commitment to "maximize local participation" was a "project goal." The CCA relied on case-law from other jurisdictions in support of the proposition that disclosure of personal information, including employees' home addresses, is prohibited by individual privacy rights. The CCA asserted that the home addresses and social security numbers contained in payroll records of third-party contractors are not public information; that they comprise private information; and that courts from other jurisdictions and the United States Supreme Court have recognized that the threat of harassment and identity theft outweigh any public interest in such information.

On December 13, 2011, the CCA answered the petition, asserting that it had provided Petitioners with the documents requested and that it had redacted employees' home addresses and security numbers as required by law. The CCA further asserted that the costs charged to Petitioners for redaction of information would have been incurred regardless of whether employees' home addresses were properly redacted because employees' social security numbers were properly redacted. It denied that Petitioners were entitled to attorney's fees and costs, and prayed for an award of costs pursuant to Tennessee Rules of Civil Procedure 54.

Following a hearing on December 19, 2011, the trial court granted Petitioners' petition and ordered the CCA to make the certified payroll records for the period requested by Petitioners available "in a form unredacted of employee home addresses." In its memorandum of findings of fact and conclusions of law, which the trial court incorporated by reference into its final order, the trial court found that Petitioners "objected to the redaction of the employee addresses, but not the redaction of the Social Security numbers." The trial court determined that the CCA had failed to demonstrate that the employee home addresses were exempt from disclosure under the TPRA or that they were confidential under any other applicable state or federal law. The trial court also found that the CCA did not willfully fail to disclose records, and that it had a good faith basis to resist disclosure of the home address of the contractors' employees. The trial court accordingly denied Petitioners' request for attorney's fees. The court additionally found that the fees charged by the CCA for production of records was appropriate where employee social security numbers were properly redacted. The trial court ordered the CCA to provide the records on or before February 15, 2012. On February 6, 2012, the CCA moved the trial court to certify that substantial legal issues exist with respect to the matter, and to stay its judgment pending appeal. The trial court granted the motion by order entered March 9, 2012. The CCA filed a timely notice of appeal.

### *Issues Presented*

The CCA presents the following issues for our review:

I.      Did the trial court err in failing to recognize that the Tennessee Public Records Act ("TPRA") explicitly requires Appellant to redact home addresses of employees of third party subcontractors working on the construction of the Music City Center?

II.      Did the trial court err in failing to recognize that the TPRA implicitly requires Appellant to redact home addresses of employees of third party subcontractors working on the construction of the Music City Center?

III.     Did the trial court err in disregarding federal law, which treats home addresses as personal to the individual and entitled to non-disclosure?

Petitioners present the additional issue of whether the trial court erred in denying them their costs and attorney's fees.

### *Standard of Review*

The issues presented require us to construe the TPRA to determine whether the residential addresses of the employees of third-party contractors contained on payroll records submitted to the CCA are explicitly or implicitly exempt from disclosure under the TPRA,  The construction of a statute and the application of a statute to the facts of a particular case are questions of law. *E.g., Gautreaux v. Internal Medicine Educ. Found.*, 336 S.W.3d 526, 531 (Tenn. 2011)(citation omitted). We review questions of law *de novo*, with no presumption of correctness for the determination of the trial court. *Id*. Where the statutory language is clear and unambiguous, "it is our duty to follow it." *Id*. "Where the statutory language is not ambiguous . . . the plain and ordinary meaning of the statute must be given effect." *Rogers v. Louisville Land Co.*, 367 S.W.3d 196, 214 (Tenn. 2012)(quoting *In re Adoption of A.M.H.,* 215 S.W.3d 793, 808 (Tenn. 2007)). The courts "'presume that the legislature says in a statute what it means and means in a statute what it says there.'" *Id*. (quoting *Gleaves v. Checker Cab Transit Corp.*, 15 S.W.3d 799, 803 (Tenn. 2000) (quoting *BellSouth Telecomms., Inc. v. Greer*, 972 S.W.2d 663, 673 (Tenn. Ct. App. 1997))). Thus, where the statutory language is clear, we apply the plain and normal meaning of the words chosen by the General Assembly, interpreting the statute so as to effectuate the General Assembly's intent "'without a forced interpretation that would limit or expand the statute's application.'" *State v. White*, 362 S.W.3d 559, 566 (Tenn. 2012) (quoting *Eastman Chem. Co. v. Johnson*, 151 S.W.3d 503, 507 (Tenn. 2004)). "If the statute is ambiguous, however, we may look to other sources, such as the broader statutory scheme and the history of the legislation." *Id*. (citing *In re Estate of Davis*, 308 S.W.3d 832, 837 (Tenn. 2010)).

### *Discussion*

The facts relevant to our disposition of this case are undisputed. We begin our examination of the issues of law presented for our review with an examination of the nature of the records that are at the center of this dispute. Pursuant to Tennessee Code Annotated § 7-4-205, contractors entering into a contract for the construction of a new publicly owned convention center are required to pay all workers not less than the prevailing wage rate that is established for contractors entering into a contract with the State under Tennessee Code Annotated 12-4-401, *et seq*., the Prevailing Wage Act. The Prevailing Wage Act in turn provides:

(a) It is hereby declared to be the policy of this state that the prevailing wage rate be determined by defined standards and that such rate be paid workers on all state construction projects.

(b) Any contractor entering into a state contract for the performance of work on state construction projects shall pay not less than the prevailing wage rate for all types and classifications of such work as determined by this part.

Tenn. Code Ann. § 12-4-403. Contractors and subcontractors (collectively, "contractors") entering into contracts to construct the convention center accordingly are required to submit to the joint-venture construction manager of the convention center, Bell/Clark, copies of their weekly payrolls. The contractors must certify that the payrolls are correct and complete, and that the wage rates paid to workers equals or exceeds the rates determined by the Tennessee Prevailing Wage Commission established by the Prevailing Wage Act. The certified payrolls periodically are submitted to the CCA for further review.

The record before us contains three public records requests filed by the International Union of Operating Engineers ("the Union"). In December 2010, the Union filed a request for "certified payroll of contractors using heavy equipment operators" and enumerated several contractors and subcontractors. Mr. Wells was listed as the contact on the request. In January 2011, the Union filed a request for the certified payroll of all contractors and subcontractors from "start of job." Mr. Wells again was listed as the contact on the request. In correspondence to the Union, the CCA advised Mr. Patterson that it had "collected, collated, and redacted 4013 pages of certified payroll documentation," and that the costs for the records totaled $1,502.00.

In March 2011, the Open Records Council of the Comptroller ("the ORC") advised the CCA by written correspondence that the CCA was subject to the TPRA as a "public nonprofit corporation and a public instrumentality of the Metropolitan government," and that the certified payroll records were "public records" under Tennessee Code Annotated § 10-7-503(a)(2)(A). The ORC further advised that it found nothing in the statutory scheme that made either the employees' home addresses or social security numbers confidential. The ORC also advised that the only provision relating to confidentiality of payroll records is contained in Tennessee Code Annotated § 12-4-414, which relates to payroll records of contractors entering into construction contracts with the State. After presenting a review of Tennessee and federal case law, the ORC concluded that it could not state with certainty whether the CCA was permitted to disclose the employee names and addresses contained on the payroll records.

In July 2011, the Union and Mr. Patterson filed a request for the certified payroll of all contractors working on the convention center from January 1, 2010, through December 31, 2010. In his request, Mr. Patterson requested the payroll records with only names and social security numbers redacted. The stated purpose of the request was "for a study to see how many Tenn. Resident[s] [were] working on the [convention center] during this time frame."

Following a meeting in mid-October 2011, the CCA advised Petitioners by written

correspondence that it did not believe it was permitted to provide certified payroll that contained the home addresses of employees of private contractors. It additionally advised Petitioners that Tennessee no longer requires the reporting of addresses and social security numbers on certified payroll reports. The CCA further stated that only about half of the reports provided home addresses or zip codes, and that the payroll records were not the "appropriate tool for determining the location of this workforce." It stated that the most recent summary of the 479 workers for whom addresses were reported, 61.8% were from the Nashville metropolitan area, and 74.1% were from Tennessee. The CCA stated that an additional 303 workers were employed on the project, for whom no home addresses or zip codes were provided. The CCA offered to compromise in an effort to avoid litigation by providing periodic, updated reports verified for accuracy by an independent third party. Petitioners rejected this offer, and this litigation ensued.

### *The Tennessee Public Records Act*

The TPRA as codified at Tennessee Code Annotated § 10-7-101, *et seq*., provides citizens of Tennessee with broad access to records of Tennessee governmental agencies.[2] *Gautreaux v. Internal Med. Educ. Found.*, 336 S.W.3d 526, 529 (Tenn. 2011)(citing *Cole v. Campbell*, 968 S.W.2d 274, 275 (Tenn. 1998)). It also grants access to records of private entities that have a relationship so extensive with the government that they are the "'functional equivalent of a governmental agency.'" *Id*. (quoting *Memphis Publ'g Co. v. Cherokee Children & Family Servs.*, 87 S.W.3d 67, 78-79 (Tenn. 2002); citing Tenn. Code Ann. § 10-7-503(a)(6)(Supp. 2010)). Thus, governmental agencies may not "escap[e] the requirements of the Act by delegating their duties to private entities." *Id*. (citing *id*.).

The purpose of the TPRA "is to promote public oversight of governmental activities." *Id*. (citing *Cherokee*, 87 S.W.3d at 74)). The Act requires disclosure of public records not specifically exempted from disclosure. Tenn. Code Ann. § 10-7-503(a)(2)(B). The TPRA defines "public records" or "state record or records" as:

> all documents, papers, letters, maps, books, photographs, microfilms, electronic data processing files and output, films, sound recordings, or other material, regardless of physical form or characteristics made or received pursuant to law or ordinance or in connection with the transaction of official business by any governmental agency[.]

Tenn. Code Ann. § 10–7–301(6). It defines a "confidential public record" as:

> any public record which has been designated confidential by statute and includes information or matters or records considered to be privileged and any aspect of which access by the general public has been generally denied[.]

---

[2]Although this matter was heard by the trial court in 2011, the relevant substantive provisions of the TPRA contained in the 2012 version of the Act do not differ from those contained in the 2010 and 2011 versions. Thus, we will cite to the 2012 Act for the sake of simplicity here.

Tenn. Code Ann. § 10-7-301(2). The Act provides:

> All state, county and municipal records shall, at all times during business hours, which for public hospitals shall be during the business hours of their administrative offices, be open for personal inspection by any citizen of this state, and those in charge of the records shall not refuse such right of inspection to any citizen, *unless otherwise provided by state law*.

Tenn. Code Ann. § 10-7-503(a)(2)(A)(emphasis added). It further provides:

> The custodian of a public record or the custodian's designee shall promptly make available for inspection any public record *not specifically exempt from disclosure*[.]

Tenn. Code Ann. § 10-7-503(a)(2)(B)(emphasis added).

The Tennessee Supreme Court has characterized the TPRA as "an all encompassing legislative attempt to cover all printed matter created or received by government in its official capacity." *Griffin v. City of Knoxville*, 821 S.W.2d 921, 923 (Tenn. 1991)(citing *Bd. of Ed. v. Memphis Publ'g Co.*, 585 S.W.2d 629, 631 (Tenn. App. 1979)). It has opined that the TPRA's broad legislative mandate "require[s] disclosure of government records even when there are significant countervailing considerations." *Gautreaux v. Internal Medicine Educ. Found.*, 336 S.W.3d 526, 529 (citing *Memphis Publ'g Co. v. City of Memphis*, 871 S.W.2d 681, 684 (Tenn. 1994)). The TPRA requires the courts to construe the statute broadly "so as to give the fullest possible public access to public records." Tenn. Code Ann. § 10–7–505(d). Accordingly, there is a "presumption of openness" under the TPRA, "favoring disclosure of governmental records." *Schneider v. City of Jackson*, 226 S.W.3d 332, 340 (Tenn. 2007) (citing *see State v. Cawood,* 134 S.W.3d 159, 165 (Tenn. 2004*)*; *Tennessean v. Elec. Power Bd.,* 979 S.W.2d 297, 305 (Tenn. 1998); *Arnold v. City of Chattanooga,* 19 S.W.3d 779, 785 (Tenn. Ct. App. 1999)).

Notwithstanding the presumption of openness, in the interest of public policy the General Assembly has provided specific explicit exemptions from disclosure contained in the TPRA itself. It has also "acknowledged and validated both explicit and implicit exceptions from disclosure found elsewhere in state law." *Swift v. Campbell*, 159 S.W.3d 565, 571 (Tenn. Ct. App. 2004). In an action filed for review of the denial of access to a record by a governmental entity, the governmental entity carries the burden of proof to justify nondisclosure by a preponderance of the evidence. *Schneider*, 226 S.W.3d at 339 (citing Tenn. Code Ann. § 10-7-505(c)).

In this case, the CCA asserts the residential addresses contained in the payroll records submitted by contractors are explicitly exempt from disclosure under the TPRA. It also asserts, in the alternative, that the addresses are implicitly exempt from disclosure, and that our construction of the TPRA should by guided by the federal statutes. We turn first to whether the residential addresses at issue in this case are explicitly exempt from disclosure by the TPRA.

*Explicit Exemption Under the TPRA*

The CCA asserts the residential addresses of employees of third-party contractors contained on the certified payrolls are explicitly exempt from disclosure under subsection 504(f) of the TPRA, which provides an exemption for certain information pertaining to "any state, county, municipal or other public employee." The CCA submits that, if the CCA is properly subject to the TPRA, then the employees of contractors constructing the convention center must be treated as "any state, county, municipal or other public employee." It contends that workers employed to work on public construction projects fall within the meaning of "other public employee" for the purpose of section 10-7-504(f). It asserts that, even assuming the employees of third-party contractors are not "other public employees," the personal privacy rights of public employees must be extended to employees working on public projects. The CCA contends that the legislative history demonstrates a presumption that personal information of private employees is precluded from disclosure.

Petitioners, on the other hand, submit that the employees of third-party contractors are not "public employees." It further submits that the CCA did not argue that the employees of third-party contractors are properly considered public employees in the trial court and cannot assert this argument for the first time on appeal. Petitioners assert that no provision of the TPRA exempts the residential addresses contained on payroll records submitted to the CCA from disclosure.

We turn first to Petitioners' assertion that the CCA failed to raise the issue of whether the home addresses contained in the payroll records were exempt under section 10-7-504(f) where the workers are properly considered "other employees" under the section. In its December 2011 response in opposition to Petitioners' petition, the CCA unambiguously relied on section 10-7-504(f) to assert that the home addresses contained in the payroll records were explicitly exempt from disclosure. The CCA further stated, "[a]ssuming arguendo that the employees of third-party contractors and subcontractors working on the construction of the Music City Center, a public project, are not classified as 'other public employees,' the same personal rights to privacy that have been extended to public employees . . . would also extend to and be of heightened nature for private employees not employed by a government entity." We are satisfied that this issue was raised in the trial court.

We next turn to whether the employees of the contractors working on the convention center are properly considered "other public employees" for the purposes of the statute. Section 10-7-504(f)(1) provides:

> The following records or information of any state, county, municipal or other public employee or former employee, or of any law enforcement officer commissioned pursuant to § 49-7-118, in the possession of a governmental entity or any person in its capacity as an employer shall be treated as confidential and shall not be open for inspection by members of the public:
> (A) Home telephone and personal cell phone numbers;
> (B) Bank account and individual health savings account, retirement account

and pension account information; provided, that nothing shall limit access to financial records of a governmental employer that show the amounts and sources of contributions to the accounts or the amount of pension or retirement benefits provided to the employee or former employee by the governmental employer;

      (C) Social security number;

      (D)(i) Residential information, including the street address, city, state and zip code, for any state employee; and

      (ii) Residential street address for any county, municipal or other public employee;

      (E) Driver license information except where driving or operating a vehicle is part of the employee's job description or job duties or incidental to the performance of the employee's job;

      (F) The information listed in subdivisions (f)(1)(A)-(E) of immediate family members or household members; and

      (G) Emergency contact information, except for that information open to public inspection in accordance with subdivision (f)(1)(D)(ii).[3]

We note that the exemption pertaining to home addresses contained in subsection 504(f)(1)(D) differs depending on whether the employee is a state employee or a county, municipal or other public employee. Under subsection 504(f)(1)(D)(i), all residential information of state employees, including the residential street address, city, state and zip code, is exempt from disclosure. However, under subsection 504(f)(1)(D)(ii), the exemption applicable to the residential addresses of county, municipal and other public employees includes only residential street addresses. The residential city, state, and zip code information of county, municipal and other public employees is not exempt from disclosure. Thus, assuming the employees whose home addresses are at issue in this case may be considered "other public employees" for the purposes of the subsection, their residential city, state, and zip code information would not be exempt from disclosure under subsection 504(f). The CCA asserts the category "other public employee" contained in subsection 504(f) encompasses the workers constructing the convention center because the convention center is a public building and the CCA is a governmental entity for the purposes of the Act. Petitioners, on the other hand, assert the employees are not public employees, but private employees hired and paid by a private employer. We must agree with Petitioners.

The CCA cites neither statute nor regulation nor case law to support its position that the workers included on the payroll records of private contractors are properly categorized as "other public employees." Rather, it asserts that the workers logically must be considered "public employees" if the CCA is considered to be an entity subject to the Act. It further asserts that workers hired by contractors to construct a public building should enjoy privacy rights in their personal identifying information equal to that of public employees.

  We cannot agree that the employees of private contractors are properly considered "public

---

[3]Subsection 504(f)(1)(G) was added by chapter 577 of the 2012 Public Acts.

employees" merely because they are constructing a public building or because the entity ultimately responsible for the project is a public entity. The term "public entity" is defined as "[a] governmental entity, such as a state government or one of its political subdivisions." Black's Law Dictionary, 8th ed. 573 (2004). Taken to its logical extension, the CCA's contention that the employees in this case are "public employees" would render any employee working on a construction project for which a public entity is ultimately responsible, or which is supported by public funds, a public employee entitled to the benefits and subject to the restrictions thereof.

An employee is "[a] person who works in the service of another person (the employer) under an express or implied contract of hire, under which the employer has the right to control the details of work performance." Black's Law Dictionary, 8th ed. 564 (2004). An employer is one who "controls and directs a worker . . . and who pays the worker's salary or wages." Black's Law Dictionary, 8th ed. 565 (2004). An employer has the right to hire and terminate an individual employee; to determine the employee's work schedule; and to control how the work is to be performed. *Galloway v. Memphis Drum Serv.*, 822 S.W.2d 584, 586 (Tenn. 1991). An employer is responsible for providing workers' compensation insurance, and for deducting applicable social security and income taxes. *See id.* at 587. The CCA performs none of the functions of an employer. The certified payroll records are not received by the CCA in the capacity of an employer, but in its capacity as a public entity in order to ensure that the contractors contracted to construct the convention center are paying *their* employees at the prevailing wage rate. Additionally, the contractors who hire the workers constructing the convention center are required to provide health insurance for all workers performing under the contract. Tenn. Code Ann. § 7-4-205(a). The workers whose records are at issue in this case are not employees of the CCA, and they do not fall within the purview of "other public employee" under Tennessee Code Annotated § 10-7-504(f).

The CCA contends that more than 350 exemptions exist for the purposes of disclosure under the TPRA. It forwards no explicit exemption, however, other than the limited exemption contained in section 10-7-504(f)(D)(ii) for public employees, that would apply to the certified payroll records in this case. We accordingly turn next to the CCA's assertion that the payroll records are implicitly exempt from disclosure under the TPRA.

### *Implicit Exemption*

The CCA contends that the trial court's determination that the workers' social security numbers are exempt from disclosure implicitly mandates a determination that their home addresses are likewise exempt. It further argues that, in this age of identity theft, and in light of the exemption for home addresses found in other sections of the TPRA, the home addresses contained in the payroll records are implicitly exempt. The CCA argues, "[t]o the extent the trial court relied on implicit authority within the TPRA in requiring the redaction of social security numbers, the trial court interpreted the TPRA too narrowly by not also finding the implicit authority requiring redaction of home addresses." We agree with the CCA that a gap arguably exists within the TPRA with respect to a blanket exception for all social security numbers, and urge the General Assembly to consider this issue. We disagree, however, with the CCA's assertion that the TPRA contains an implicit

exception for all residential addresses.

We observe that, contrary to the CCA's assertion that the trial court found that social security numbers are excepted from disclosure by the TPRA, the trial court found that Petitioners requested the certified payroll records with the social security numbers redacted. Accordingly, whether the employees social security numbers are exempt from disclosure under the Act was not an issue in the trial court. We additionally observe that, with limited exceptions, the Tennessee Code explicitly prevents State agencies from disclosing the social security number of any citizen of Tennessee. Tenn. Code Ann. § 4-4-125. Federal law provides that social security numbers obtained pursuant to any provision of law enacted on or after October 1, 1990, are confidential and shall not be disclosed by any officer or employee of a governmental entity.[4] 42 U.S.C. § 405(c)(2)(C)(viii). The CCA obtained the social security numbers of employees hired by contractors constructing the convention center in order to assure compliance with Tennessee Code Annotated § 7-4-205, which was enacted in 2007. Whether the explicit exception from disclosure of social security numbers provided by Tennessee Code Annotated § 4-4-125 is extended to all political subdivisions of the State, and agencies thereof, must be left to the General Assembly to determine.

The CCA asserts that the TPRA implicitly excepts home addresses contained in payroll records submitted to the CCA where the Act explicitly excepts residential addresses in some subsections. The CCA's argument, as we perceive it, is that an explicit exception for home addresses in some subsections of the Act implies an exception for home addresses contained in all public records. Neither our case law nor the statutes support this assertion.

In *Tennessean v. Electric Power Board of Nashville*, plaintiff newspaper sought a list of customer names, addresses, and telephone numbers from defendant city electric utility. *Tennessean v. Elec. Power Bd. of Nashville*, 979 S.W.2d 297 (Tenn. 1998). The Tennessee Supreme Court held that the information sought by plaintiff was a public record, and that the utility was required to disclose the requested information under the TPRA notwithstanding that it did not maintain the information in the format requested by the plaintiff. *Id*. at 298. The TPRA currently provides that the "private records" of a utility shall not be open for inspection. Tenn. Code Ann. § 10-7-504(a)(20)(B)(2012). Home addresses, however, are not included in the statutory definition of "private records" for the purpose of the subsection. Tenn. Code Ann*.* § 10-7-504(a)(20)(A)(iii).

---

[4]42 U.S.C. § 405(c)(2)(C)(viii) provides:

(viii)(I) Social security account numbers and related records that are obtained or maintained by authorized persons pursuant to any provision of law enacted on or after October 1, 1990, shall be confidential, and no authorized person shall disclose any such social security account number or related record. The term "authorized person" includes "an officer or employee of the United States, an officer or employee of any State, political subdivision of a State, or agency of a State or political subdivision of a State, and any other person (or officer or employee thereof), who has or had access to social security account numbers or related records pursuant to any provision of law enacted on or after October 1, 1990."

The Act provides an exception for identifying information "that could reasonably be used to locate the whereabouts of an individual" that is contained in records maintained by a utility service provider where the individual has obtained a valid order of protection and where that individual has presented the order to the utility. Tenn. Code Ann. § 10-7-504(a)(15)(B). Home addresses are included in the definition of "identifying information" contained in the subsection. Tenn. Code Ann. § 10-7-504(a)(15)(A)(i). The General Assembly clearly has not chosen to provide a comprehensive exception for home addresses contained in records maintained by utility service providers since the supreme court's holding in *Tennessean* in 1998. The courts assume that the General Assembly is aware of the state of the law when drafting or amending statutory provisions. *E.g., Purkey v. Am. Home Assur. Co.*, 173 S.W.3d 703, 709 (Tenn. 2005). Accordingly, despite the CCA's assertion that all home addresses should be exempt from disclosure under the TPRA, the General Assembly has chosen not to exempt such information notwithstanding the supreme court's holding in 1998.

Implicit exceptions to the TPRA are those that are found in "other state law." Tenn. Code Ann. § 10-7-503(a); *Swift v. Campbell*, 159 S.W.3d 565, 527 (Tenn. Ct. App. 2005). Disclosure of public records is required unless it is clear that a record is excepted either explicitly by the Act or implicitly by application of another state law. *Swift,* 159 S.W.3d at 527 (citing *Memphis Publ'g Co. v. City of Memphis*, 871 S.W.2d at 684). The CCA cites us to no Tennessee law that provides a blanket exception from disclosure of residential street addresses, and we find none. Moreover, as discussed above, even if the workers in this case were to be considered "other public employees" for the purpose of section 10-7-504(f), their residential city, state and zip code information would not be exempt from disclosure under subsection 504(f)(1)(D)(ii).

As noted above, however, in the ORC's March 2011 recommendation to the CCA, the ORC referenced Tennessee Code Annotated § 12-4-414 and stated:

> The only provision that I found that relates to the confidentiality of certified payroll records is specific to contractors who enter into construction contracts with the State of Tennessee.

As we also noted above, Tennessee Code Annotated § 7-4-205(a) requires the CCA to comply with the Prevailing Wage Act during the construction of the new convention center. Section 7-4-205 provides:

> (a) During the construction of a new publicly owned convention center as provided in this part, any contractor entering into a contract with the metropolitan government for the performance of work on the convention center shall pay all workers performing work under those contracts not less than the prevailing wage rate for all types and classifications of work for contractors entering into a state contract pursuant to the Prevailing Wage Act of 1975, compiled in title 12, chapter 4, part 4. In addition, all such contractors shall provide health insurance coverage for all workers performing work under the contracts.

In light of the mandate of section 7-4-205(a) and the ORC's suggestion that payroll records of contractors who enter into construction contracts with the State are confidential, we permitted the parties to supplement their briefs to address the extent to which the provisions of the Prevailing Wage Act codified in Title 12 impacts construction projects governed by section 7-4-205, and whether the Prevailing Wage Act provides an implicit exception from disclosure of the information contained on the payroll records in this case.

In its supplemental brief, the CCA asserts that, read together, Tennessee Code Annotated §§ 7-4-205(a) and 12-4-414 stand for the proposition that the General Assembly intended to protect all payroll records and the personal information contained in them from disclosure. It re-asserts its argument that the workers whose addresses are at issue in this case must be afforded the same protections provided to "state, county, municipal or other public employee[s]" under Tennessee Code Annotated § 10-7-504(f). It additionally cites Section 4.20.100 of the Metro Procurement Code in support of its assertion that contractors are not required to include workers' residential addresses on the certified payroll records submitted to the CCA, and argues that it is therefore not required to disclose those addresses under the TPRA.

Petitioners, on the other hand, assert in their supplemental brief that section 7-4-205(a) does not incorporate any exclusion contained in the Prevailing Wage Act, but simply establishes the standard for the minimum pay rate that a contractor may pay employees working under a contract with a metropolitan government. Petitioners contend that the reference to the Prevailing Wage Act in section 7-4-205 does not incorporate the Prevailing Wage Act in its entirety. Petitioners further contend that the exemption extended by Tennessee Code Annotated § 12-4-414 is not applicable in this case. Petitioners assert that only payroll records submitted to the Prevailing Wage Commission for the purpose of establishing the prevailing wage are exempt from disclosure under section 12-4-414, and that payroll records submitted to the contracting state agency under section 12-4-411 are not excluded from public inspection. Petitioners reference the ORC's March 2011 letter to the CCA in support of their assertion that the General Assembly created an exception only for payroll records collected by the Prevailing Wage Commission for the purpose of setting the prevailing wage.

In its supplemental reply brief, the CCA asserts that section 7-4-205 explicitly references the Prevailing Wage Act as a "guidepost" with respect to the payment of wages to workers constructing the new convention center in Nashville. It submits that subsection 414 of the Prevailing Wage Act, in turn, explicitly protects payroll records from public disclosure. It argues that Petitioners construe subsection 414 too narrowly, and that the subsection encompasses not only payroll records submitted to the prevailing wage commission, but to all payroll records. The CCA reiterates its assertion that "the TPRA protects everyone's home addresses from disclosure, whether one is a private employee or a public employee."

Tennessee Code Annotated § 12-4-411 provides:

> (a) Any person, contractor, firm or corporation who may enter into any state contract shall furnish to the state agency entering into such contractual agreement any

necessary forms, papers, payroll copies or any other information that may be required of any such person, contractor, firm or corporation by the state agency to show compliance with this part.

(b) Payroll records shall not be destroyed for one (1) year following the completion of the state construction project.

Section 12-4-414 provides:

All records and documentation provided for in this part, other than payroll records, shall be made available for public inspection by the commission and the department of labor and workforce development during normal business hours.

The parties do not address the extent to which the Prevailing Wage Act governs the procedure followed by governmental entities which must comply with its mandate, and the record offers no guidance on this matter. The CCA, however, references no authority which would indicate that payroll records submitted to state agencies by contractors on state construction projects are confidential. We have held, however, that payroll records maintained by state, county and municipal agencies are public records for the purpose of the TPRA. *Cleveland Newspapers v. Bradley County Mem. Hosp. Bd. of Directors*, 621 S.W.2d 763 (Tenn. Ct. App. 1981); *Chattanooga Publ'g Co. v. Hamilton County*, No. E2003-00076-COA-R3-CV, 2003 WL 22469808 (Tenn. Ct. App. Oct. 31, 2003)(stating that the records in that case, including the payroll records of poll workers in the possession of the Hamilton County Election Commission, were public records for the purposes of the TPRA). Additionally, section 12-4-414 references only records which must be held open for inspection by the commission and department of labor, and is silent with respect to records which must be submitted to the appropriate state agency under section 12-4-411. In light of the mandate of Tennessee Code Annotated § 10-7-505(d) to "give the fullest possible public access to public records," even assuming that the provisions of the Prevailing Wage Act are incorporated by section 7-4-205(a), we conclude that the implicit exemption to the TPRA extended to payroll records under section 12-4-414 is not applicable to the payroll records at issue in this case.

The CCA further urges that the legislative history of the TPRA implicitly provides an exemption from disclosure for all residential addresses. When construing a statute, "'the courts are restricted to the natural and ordinary meaning of the language used by the Legislature within the four corners of the statute, unless an ambiguity requires resort elsewhere to ascertain legislative intent.'" *Memphis Publ'g Co. v. Holt*, 710 S.W.2d 513, 516 (qutoing *Austin v. Memphis Publ'g Co.*, 655 S.W.2d 146, 148 (Tenn. 1983)). We find no ambiguity in the exemptions provided by the statute. The payroll records in this case are public records under Tennessee Code Annotated § 10-7-503. Section 10-7-504(f) does not exempt them from disclosure, nor does it exempt the workers' residential addresses from disclosure. This holding is consistent with the broad mandate contained in Tennessee Code Annotated § 10-7-505(d) and our supreme court's construction of the statute.

The CCA also asserts that, as a matter of public policy, the personal identifying information of private employees should be confidential to the same extent as that of public employees. In the

absence of an established exception to the TPRA, we must require disclosure of information contained in a public record "'even in the face of serious countervailing considerations.'" *Schneider v. City of Jackson*, 226 S.W.3d 332, 340 (Tenn. 2007) (quoting *Memphis Publ'g Co. v. City of Memphis*, 871 S.W.2d 681, 684 (Tenn.1994)). The supreme court has emphasized its "unwillingness to judicially adopt public policy exceptions to the Public Records Act[,]" stating that it is the prerogative of the General Assembly to enunciate exceptions to disclosure based on public policy. *Id*. at 344 (opining that creating a public policy exception to encompass a law enforcement privilege was "within the prerogative of the legislature[.]"); *see also, State v. Cawood*, 134 S.W.3d 159, 167 (Tenn. 2004)(acknowledging a right to individual privacy but declining to create a public policy exception in light of legislative mandate that the legislature "alone has the power to make public policy exceptions to section 10–7–503, and any exception must be supported by specific authority"). We accordingly decline to address whether the residential addresses of workers in this case should be exempt from disclosure as a matter of public policy in the absence of an explicit exemption within the TPRA or an implicit exemption provided elsewhere in the statutes. The determination of the extent to which personal identifying information, including social security numbers and residential addresses, should be exempt from disclosure under the TPRA as a matter of public policy is one which we must leave to the General Assembly.

### *Applicability of Federal Law*

The CCA finally contends that case law construing the federal Freedom of Information Act ("FOIA") should guide our determination here, and that the trial court erred by disregarding FOIA jurisprudence. The CCA cites *Seaton v. Johnson*, 898 S.W.2d 232 (Tenn. Ct. App. 1995), for the proposition that information exempt from disclosure under FOIA also is exempt under the TPRA. The CCA also contends that disclosure of the home addresses of employees violates the employees' privacy rights. It asserts that courts construing the FOIA have sought to balance individual privacy interests against the public interest to be served by disclosure, and that we must engage in a similar analysis here. Finally, the CCA asserts that federal courts construing the Davis-Bacon Act, the federal act upon which the Prevailing Wage Act is modeled, have concluded that an employee's home address is personal information, and that the employee's privacy rights, the risk of identity theft, and the possibility of harassment outweigh the need for disclosure. Petitioners, on the other hand, assert that, unlike FOIA, the TPRA contains no balancing provision. They further assert that the CCA lacks standing to assert the privacy rights of the individual employees whose records are at issue in this case.

We begin our discussion of this issue by noting that the parties agree that the convention center construction project is not governed by the federal Davis-Bacon Act. We additionally note that federal law confidentiality provisions may govern some records sought under the TPRA. Tennessee Code Annotated § 10-7-503(b) provides:

> The head of a governmental entity may promulgate rules in accordance with the Uniform
> Administrative Procedures Act, compiled in title 4, chapter 5, to maintain the

-15-

confidentiality of records concerning adoption proceedings or records required to be kept confidential by federal statute or regulation as a condition for the receipt of federal funds or for participation in a federally funded program.

In *Seaton v. Johnson*, the case relied upon by the CCA, we held that the records held by the Tennessee Department of Transportation ("TDOT") in that case were exempt from disclosure under federal law. *Seaton v. Johnson*, 898 S.W.2d 232 (Tenn. Ct. App. 1995). In *Seaton*, we did not hold that the requested information was implicitly exempt under the TPRA where it would have been exempt under FOIA anlysis. Rather, we held that information was immune from disclosure as confidential pursuant to 23 U.S.C. §§§130, 144 and 152. Our holding in *Seaton* was based on federal preemption. *Id.* at 237. Similarly, the Driver's Privacy Protection Act, 18 U.S.C. §§ 2721-2725 controls the disclosure of personal information contained in state department of motor vehicle records.[5] *Reno v. Condon*, 528 U.S, 141 (2000).[3] These exceptions are based on controlling federal law, not upon FOIA analysis.

In *United States Department of Defense v. Federal Labor Relations Authority,* two unions requested the names and home addresses of agency employees from the petitioner federal agencies. *United States Dep't of Defense v. Fed. Labor Relations Auth.,* 510 U.S. 487 (1994). The Court engaged the balancing analysis established in *Department of Justice v. Reporters Committee for Freedom of Press*, 489 U.S. 749 (1989), and concluded:

Because the privacy interest of bargaining unit employees in nondisclosure of their home addresses substantially outweighs the negligible FOIA-related public interest in disclosure, we conclude that disclosure would constitute a "clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). FOIA, thus, does not require the agencies to divulge the addresses, and the Privacy Act, therefore, prohibits their release to the unions.

*Id.* at 502. Federal courts construing whether the disclosure of personal identifying information is required in the context of a FOIA request for the purpose of establishing compliance with the Davis-Bacon Act[6] have determined that the privacy interests of employees in non-disclosure of their addresses outweighs the public interest advanced by disclosure. *Sheet Metal Workers Intern. Ass'n, Local Union No. 19 v. United States Dep't of Veterans Affairs*, 135 F.3d 891, 905 (3d Cir. 1998). The resolution of the issue under FOIA, however, requires an examination of whether "the disclosure [of the home addresses] 'would constitute a clearly unwarranted invasion of [the] personal privacy'

---

[5]The TPRA provides that personal information contained in motor vehicle records shall be treated as confidential and are open for inspection only in accordance with chapter 25 of title 55. Tenn. Code Ann. § 10-7-504(a)(12).

[6]The Davis Bacon Act requires contractors and subcontractors to pay all mechanics and laborers employed at a federal construction project at minimum the prevailing wage of the civil subdivision in the state where the work is to be performed. 49 U.S.C.A. § 3142 (West 2012).

. . . within the meaning of FOIA." *Id.* at 897 (quoting *United States Dep't of Defense v. Federal Labor Relations Auth.*, 510 U.S. 487, 495 (1994)). 5 U.S.C.A. § 552(a), the "Privacy Act," prevents disclosure of information unless disclosure is required, *inter alia*, by FOIA.

Under FOIA, an analysis of the issue raised in this case would require us to

weigh the privacy interest of bargaining unit employees in nondisclosure of their addresses against the only relevant public interest in the FOIA balancing analysis-the extent to which disclosure of the information sought would "she[d] light on an agency's performance of its statutory duties" or otherwise let citizens know "what their government is up to."

*Dep't of Defense v. Fed. Labor Relations Auth.*, 510 U.S. at 497 (quoting *United States Dep't of Justice v. Reporters Comm. For Freedom of Press*, 489 U.S. 749, 773, 109 S.Ct. 1468, 1482 (1989)(internal quotation marks omitted; emphasis deleted)). The CCA urges us to adopt this balancing of interests test here. The Tennessee Supreme Court, however, has held that the TPRA contains no balancing of interests test. *Memphis Publ'g Co. v. Holt*, 710 S.W.2d 513, 517-18 (Tenn. 1986). The Tennessee Supreme Court has further stated:

T.C.A. § 10–7–505 does not limit the scope of T.C.A. § 10–7–503, nor does it give the courts leeway to exempt records from public inspection. It does no more than provide an enforcement mechanism to gain access to governmental records opened to the public by T.C.A. § 10–7–503. When the two sections are read together, it is evident that a public official can justify refusing a Tennessee citizen access to a governmental record only by proving by a preponderance of the evidence that the record in controversy comes within a statutory exemption.

*Id*. We accordingly agree with the trial court that federal cases construing the question presented by this case are not instructive where the TPRA does not contain a balancing of interest test similar to that imposed by FOIA.

The CCA additionally asserts that workers have constitutional privacy rights to nondisclosure of their home addresses, and that disclosure of residential addresses under the TPRA would violate this right. Petitioners assert that the CCA lacks standing to assert this issue. In *Schneider v. City of Jackson*, the supreme court stated that the City of Jackson had failed to demonstrate that it had standing to assert the privacy rights of individuals where the cases upon which it relied were filed by the individuals alleging constitutional violations. *Schneider v. City of Jackson*, 226 S.W.3d 332, 344 n.16 (Tenn. 2007). The *Schneider* court additionally stated:

were we to assume that the City has standing to assert the constitutional claim, the City has failed to offer specific proof that disclosing the field interview cards would threaten the personal security and bodily integrity of certain interviewees, proof that is necessary to establish such a claim.

-17-

*Id.*

In the current case, the CCA relies upon cases interpreting this issue for the purposes of FOIA which, as noted above, includes a Privacy Act and balancing test not contained in the TPRA. It also relies upon *Does v. City of Trenton Department of Public Works*, 565 F.Supp.2d 560 (D.N.J. 2008) and *Department of Conservation and Natural Resources v. Office of Open Records*, 1 A.3d 929 (Pa. Commw. 2010). In *City of Trenton*, plaintiffs were the employees of a general contractor engaged in the construction of public works projects. *Does v. City of Trenton Dep't of Public Works*, 565 F.Supp.2d at 562. In *Department of Conservation and Natural Resources v. Office of Open Records*, the court declined to address the constitutional issues and disposed of the matter on statutory grounds. *Dep't of Conservation and Natural Res. v. Office of Open Records*, 1 A.3d at 936. As in *Schneider*, Petitioners here have failed to demonstrate that they have standing to assert the individual workers' constitutional privacy rights. Additionally, as in *Schneider*, Petitioners here have offered no proof that disclosing the workers' addresses would threaten the personal security or bodily integrity of any worker. We accordingly decline to address this issue.

### *Attorney's Fees and Costs*

We finally turn to Petitioners' argument on cross-appeal that the trial court erred by denying them an award of attorney's fees and costs. Tennessee Code Annotated § 10-7-505(g) grants the trial court the discretion to award costs and attorney's fees in cases wherein the court determines that the governmental entity willfully refused to disclose a record that it knew was public. It additionally provides that, in determining whether the failure to disclose was willful, the court may consider any guidance provided to the custodian of the requested record by the office of the open records counsel. This provision of the TPRA is "by its terms a limited award provision." *Memphis Publ'g Co. v. City of Memphis*, 871 S.W.2d 681, 689 (Tenn. 1994). The determination of whether an award of attorney's fees is appropriate is within the sound discretion of the trial court, and we will not disturb the trial court's determination absent an abuse of discretion. *Greer v. City of Memphis*, 356 S.W.3d 917, 920-21 (Tenn. Ct. App. 2010)(citing *Memphis Publ'g Co. v. Cherokee Children & Family Servs.*, 87 S.W.3d 67, 80 n. 15 (Tenn. 2002)).

Our supreme court has noted that the finding of willfulness required by the statute is akin to a bad faith requirement. *Schneider v. City of Jackson*, 226 S.W.3d 332, 346 (Tenn. 2007). It opined,

> Stated differently, the Public Records Act does not authorize a recovery of attorneys' fees if the withholding governmental entity acts with a good faith belief that the records are excepted from the disclosure. Moreover, in assessing willfulness, Tennessee courts must not impute to a governmental entity the "duty to foretell an uncertain juridical future."

*Id.* (quoting *Memphis Publ'g Co. v. City of Memphis*, 871 S.W.2d at 689).

In this case, the CCA did not refuse to disclose the records sought by Petitioners. Rather, it

disclosed the records but asserted that the personal identifying information contained within them was rightfully redacted. It sought advice from the ORC with respect to whether the personal information was appropriately redacted, and the ORC observed that the issue was one of first impression in Tennessee. Petitioners did not object to the redaction of social security numbers contained in the records, and the case proceeded on the question of whether the workers' residential addresses were exempt from disclosure. The trial court found that the CCA acted in good faith. The evidence in the record does not preponderate against this finding, and we find no abuse of discretion on the part of the trial court in this matter.

## *Holding*

In light of the foregoing, the judgment of the trial court is affirmed. This case is remanded to the trial court for enforcement of the judgment and the collection of costs. Costs on appeal are taxed to the Appellant, The Convention Center Authority of the Metropolitan Government of Nashville and Davidson County.

_____
DAVID R. FARMER, JUDGE